## Hugh Bailie *v.* Samuel Bailie, Appellant.

*Equity—Pleading—Responsive answer—Evidence—Partnership.*

In a bill in equity for an account, plaintiff averred that there was an agreement between himself and defendant, by which he was to receive fifteen dollars per week for services in a store, and one fourth part of the profits. The bill admitted payment at the rate demanded from October, 1887, to May, 1889, and at the rate of fifteen dollars per week from May, 1889, to January, 1890, at which time plaintiff left the store. The bill asked for an account of one fourth of the profits from May, 1889, to January, 1890. The answer admitted that a contract was made in October, 1887, as alleged, which was by its terms to continue until the next annual

account of stock should be taken; that this took place in May, 1889, after which on account of the smallness of the profits, and of the return for the use of the capital employed, the share in the profits was no longer to be paid, but the plaintiff, so long as he chose to remain, was to receive only the weekly sum of fifteen dollars; that he remained on these terms until the eighteenth day of January, 1890, making no claim to share in the profits during, nor at the close of this part of his service, nor until more than six months afterwards. *Held,* that the answer was responsive to the bill, and it could not be overcome by the plaintiff's testimony alone, unsupported by a second witness or corroborative proof.

Argued Jan. 14, 1895.   Appeal, No. 57, July T., 1894, by defendant, from decree of C. P. No. 4, Phila. Co., June T., 1891, No. 854, on bill in equity in favor of plaintiff.   Before STERRETT, C. J., GREEN, WILLIAMS, MCCOLLUM, MITCHELL, DEAN and FELL, JJ.   Reversed.

Bill in equity for account.

The bill alleged that plaintiff and defendant are brothers; that the plaintiff was employed as assistant in the grocery store of another brother, John Bailie, who died October 20, 1887; that shortly afterward the defendant bought the business of his deceased brother, and having no experience in it, engaged the plaintiff to remain with him, and on October 24, 1887, it was verbally agreed between them that plaintiff would enter into the employment of defendant as his salesman and collector, at a salary of $15 a week and twenty-five per cent of the net profits of the business; the profits to be ascertained at the annual settlement of the defendant's books; the employment to continue until ended by mutual assent.

That the plaintiff on October 24, 1887, entered upon such employment and continued until January 18, 1890, on which day it ended by mutual agreement of plaintiff and defendant.

That on May 3, 1889, a full settlement was made between plaintiff and defendant, and the latter paid the former twenty-five per cent of the net profits up to that date, and also $15 a week. But that since May 3, 1889, the defendant has paid the plaintiff no more than $15 a week; this he did up to January 18, 1890, when the employment ceased.   That the plaintiff has requested a settlement of the net profits which he believes have been large, but this has been refused.

The prayer of the bill was:

1. For an account of the net profits from May 3, 1889, to January 18, 1890.

2. For a decree directing payment of the amount found due.

The answer admitted the respondent's purchase, in 1887, of the grocery business of his brother John, with whom he had for eight years been in partnership; alleged that in October, 1887, he engaged the plaintiff as a salesman at a weekly salary of $15 and twenty-five per cent of the net profits of the business, to continue until an account of stock could be taken, which it had been customary to take in May; that none was taken until May, 1889. The answer denied any other arrangement than the above, and denied that the employment of the plaintiff was to continue until ended by mutual assent.

The answer alleged that in May, 1889, there was a full accounting and payment by the defendant to the plaintiff of $15 a week and twenty-five per cent of net profits of the business; that thereupon the defendant told the plaintiff that owing to the small sum which he received he could no longer continue the arrangement. The plaintiff was invited to examine the figures and was asked if he would continue such a contract were he in defendant's place; he said he would not, and the defendant told him he could pay him $15 a week, but no more. The plaintiff assented to this and remained until January 18, 1890, when he left, having received without objection the $15 a week, and having made no demand for more until six months after he left.

The case was referred to Francis M. Thole, Esq., as master, who reported a decree in favor of plaintiff.

Exceptions to the master's report were dismissed by the court, and a decree entered in favor of plaintiff for $830.48 and costs.

*Errors assigned* were in dismissing exceptions to the master's report.

*E. Hunn Hanson, John Sparhawk, Jr.,* with him, for appellant, cited: Eaton's Ap., 66 Pa. 483; Burke's Ap., 99 Pa. 350.

*William W. Ker,* for appellee, cited: Spencer & Newbold's Ap., 80 Pa. 317.

OPINION BY MR. JUSTICE WILLIAMS, March 4, 1895:

The prayer for an account in this case rested on a claim for services as a clerk in a grocery store at the rate of fifteen dollars per week, and a one fourth part of the profits made by the store. The bill admitted payment at the rate demanded from October, 1887, to May, 1889, and at the rate of fifteen dollars per week from the third day of May, 1889, to the eighteenth day of January, 1890, at which time the plaintiff voluntarily left his brother's employment; and asked that an account be taken of the profits made from May, 1889, to January, 1890, and that the defendant be required to pay over to him the one fourth thereof. The answer admitted that a contract was made in October, 1887, as alleged, which was by its terms to continue until the next annual account of stock should be taken; that this took place in May, 1889, after which, on account of the smallness of the profits, and of the return for the use of the capital employed, the share in the profits was no longer to be paid, but the plaintiff, so long as he chose to remain, was to receive only the weekly sum of fifteen dollars; that he remained on these terms until the eighteenth day of January, 1890, making no claim to share in the profits during, nor at the close of this part of his service, or until more than six months afterwards. This was responsive to the bill. It admitted the making of the contract in October, 1887, and payment in accordance with its terms as alleged by the plaintiff. It denied that the contract was to continue indefinitely, alleged that it was ended by mutual consent in May, 1889, and that the subsequent services of the plaintiff were rendered and were settled for at the rate of fifteen dollars per week.

The question of fact thus raised was whether the admitted contract remained in force after May, 1889. The bill asserted it. The answer distinctly denied it. Here was oath against oath, with the burden on the plaintiff of overcoming the answer. He was not corroborated however by any witness nor by any important circumstance. His declarations shown by Robinson and Palmer make it clear that he knew how his brother understood their relations after the stock taking. The further facts that with this knowledge he continued at work till 1890, making no claim to any other compensation than his weekly wages; that when he left he settled upon that basis; and that accord-

ing to his own testimony he never spoke to his brother on the subject of his interest in the profits from the stock taking in May, 1889, till his letter written in July, 1890, six months after he left the store, are not consistent with his present allegations that he supposed himself entitled to share in the profits during his whole period of service.   On the other hand his declarations and his conduct are fairly corroborative of the defendant. Upon the question of fact on which the case depended the plaintiff stood absolutely alone while his declarations and his conduct tended to corroborate the testimony of the defendant. The fair preponderance of the evidence was against him, to say nothing of the effect of the answer, to overcome which the plaintiff required more than his own oath.   The learned master seems to have lost sight of the effect of the answer, and to have reached the conclusion that it was not responsive and therefore not within the rule which put the burden on the plaintiff of overcoming it by more than his oath ; and that the defendant contradicted it by his own testimony, so as to destroy its value as an answer.   We are wholly unable to understand the process by which these conclusions were reached.   We can adopt neither of them.   The answer is responsive so far as the only question in controversy is concerned.   It denies distinctly that the contract covered any services after the stock taking in May, 1889.   The defendant's testimony is in entire harmony with his answer, and what should be conclusive on the subject is that the plaintiff's declarations and conduct are not consistent with an honest belief on his part that his original contract continued in full force after May, 1889.   If the conclusions of the master had rested only on his estimate of the credibility of the parties we should be inclined to let them stand ; but they do not.   We cannot adopt his construction of the answer, or of the testimony, and for this reason we are constrained to reject the conclusions he has reached in regard to their effect.   The decree is reversed and the bill is dismissed, the plaintiff to pay the costs.